UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MORRIS KIGHT,

    Plaintiff,

vs.                                                    Case No.  3:07-cv-524-J-MCR

MICHAEL ASTRUE, Commissioner of the
Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER[1]**

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **AFFIRMED**.

**I.    PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on August 17, 2005, alleging an inability to work since July 14, 2005. (Tr. 62-66). The Social Security Administration ("SSA") denied this application initially and on reconsideration. (Tr. 7-28, 9, 30-31, 35-36). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on August 17, 2006. (Tr. 265-89). On November 17, 2006, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 13-26). By a decision dated April 26, 2007, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (Tr. 4-5). Having exhausted all

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 9).

administrative remedies, Plaintiff filed this case seeking judicial review of the ALJ's decision under section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claims to be disabled since July 14, 2005, due to Reflex Sympathetic Dystrophy ("RSD"), Carpal Tunnel Syndrome ("CTS"), and Myalgia, all which Plaintiff claims cause severe and constant upper extremity pain, fatigue, cervical impairments, memory problems, and bilateral upper extremity limitations.  (Doc. 8, p. 2).

### B.   Summary of Evidence Before the ALJ

Plaintiff was 48 years of age on the date the ALJ issued his decision following a hearing on August 17, 2006 in Jacksonville, Florida.  (Tr. 268).  At the hearing, Plaintiff testified he had completed high school and worked as a Heavy Equipment Mechanic for 26 years with PCS Company.  (Tr. 18, 272).

Plaintiff was first diagnosed with CTS on July 21, 2004 by Dr. Powell following an injury while on the job.  (Tr. 18. 160).  After diagnosis, Plaintiff underwent left carpal tunnel release by Dr. Powell on January 4, 2005.  (Tr. 20, 154-55).  Plaintiff returned to work after the operation and started performing light duty.  (Tr. 20).  On February 16, 2005, Plaintiff returned to Dr. Powell for a follow-up appointment and reported pain, swelling, and a tight feeling in his hands.  Id.  Dr. Powell noted Plaintiff had bilateral CTS of moderate severity on the right and mild-moderate severity on the left.  (T. 143).  Dr. Powell also ordered a cervical MRI, which was performed on February 24, 2005.  It revealed multi-level cervical disc disease.  (T. 20, 144-45).  On July 13, 2005, Dr.

Powell noted Plaintiff still experienced bilateral CTS, complicated by RSD in the left hand following the operation.  (Tr. 20, 146).  Dr. Powell concluded Plaintiff was at maximum medical improvement with a 23% permanent impairment rating for CTS.  (Tr. 20, 146).

Plaintiff saw Dr. David Bole, an acupuncture physician, on July 26, 2005.  (Tr. 20, 171).  Plaintiff told Dr. Bole he was experiencing a burning sensation in his upper extremities, headaches, and extreme fatigue, which he claimed kept him from doing any physical activity.  (Tr. 20, 171).  Dr. Bole recommended acupuncture and massage therapy accompanied with herbal therapies to control Plaintiff's pain and help him recover.  (Tr. 20, 163-71).

On August 4, 2005, Plaintiff saw Dr. Allamm Morales and complained of depression.  (Tr. 20, 180).  Nerve conduction and needle EMG tests were performed on September 20, 2005 and revealed findings consistent with C6-7 cervical radiculopathy.  (Tr. 20, 174).  Dr. Morales's diagnosis confirmed Plaintiff was suffering from depression.  (Tr. 20, 180).

An additional opinion with respect to Plaintiff's mental state was rendered by Dr. Umesh Mhatre, who performed a psychiatric evaluation on behalf of Plaintiff's workers' compensation carrier on August 10, 2005, just six days after Dr. Morales evaluated Plaintiff.  (Tr. 17, 159-62).  Dr. Mhatre noted Plaintiff denied any symptoms of depression and opined that Plaintiff had no psychiatric illnesses and was not currently experiencing depression.  (Tr. 18, 161-62).  The same psychiatric conclusion was also reached by a non-reviewing physician, Dr. Alvarez-Mullin, who reviewed the medical evidence on October 19, 2005 (Tr. 181-89), and also on March 8, 2006 by a physician

whose name cannot be discerned. (Tr. 203-16).

Dr. Raul Zelaya performed a physical consultative examination on October 28, 2005 at the request of the Social Security Administration. (Tr. 20, 190-96). Plaintiff complained of neck pain, significant pain in both wrists, and a burning sensation in the forearms. (Tr. 20, 190-91). Dr. Zelaya's diagnoses following the examination included bilateral CTS, Dupuytren's contracture of the left hand and early complex regional pain syndrome of the upper extremities. (Tr. 21, 193).

On December 19, 2005, Plaintiff saw Dr. Powell once again for a follow-up of the carpal tunnel release resulting in RSD in the left hand. (Tr. 21, 226). Dr. Powell noted RSD had developed in other areas, as well. Id. He also recognized Plaintiff was on multiple medications and was seeing a chronic pain physician. Id. Due to the pain and the medications to help counter the pain, Dr. Powell opined Plaintiff could not work because he could barely function. Id.

Plaintiff claimed his symptoms started to worsen and on January 8 and February 14, 2006, he was treated for hypertension, RSD, and anxiety by Dr. Alex Gonzalez. (Tr. 197-98). A few months later on June 29, 2006, Plaintiff also received treatment for fatigue. (Tr. 262). Along with treating these symptoms, Dr. Gonzalez referred Plaintiff to Dr. Angela McSwain. (Tr. 22). On January 31, 2006, Dr. McSwain treated Plaintiff for pain in the left forearm and shoulder region. (Tr. 22, 253-56). Dr. McSwain noted the progressive worsening of Plaintiff's fatigue, muscle aches, swelling, and pain. (Tr. 22, 254). Dr. McSwain's overall impression was of systemic symptoms of worsening fatigue and myalgias combined with left forearm and shoulder pain and intermittent swelling of the hands. (Tr. 22). She could not confirm RSD and said Plaintiff might be

experiencing a connective tissue or autoimmune disease. (Tr. 22, 255). At Plaintiff's follow-up appointment with Dr. McSwain on April 18, 2006, Dr. McSwain's impression was of chronic bilateral upper extremities and fatigue, probable underlying reactive depression and anxiety, and possible subjective memory loss. (Tr. 249). At both visits, Dr. McSwain advised Plaintiff to continue treatment with Dr. Puente-Guzman. (Tr. 255, 249).

Records from Dr. Rigoberto Puente-Guzman are first dated February 18, 2005, where Dr. Puente-Guzman evaluated Plaintiff's CTS. (Tr. 20, 143). The most comprehensive records from Dr. Puente-Guzman start on January 6, 2006 (Tr. 21, 245), where Plaintiff reported a worsening of his symptoms, including intermittent swelling of the hands, arm pain, and generalized fatigue. (Tr. 245). On January 26, 2006, Dr. Puente-Guzman examined Plaintiff and diagnosed him with the following: chronic bilateral hand and arm pain; Dupuytren's contracture in bilateral upper extremities; status post left carpal tunnel release with persistent soreness and swelling, skin color changes, temperature changes, and hyperbidrosis; multi-level cervical disc disease; and bilateral CTS. (Tr. 21-22, 243).

Plaintiff returned to Dr. Puente-Guzman for a follow-up appointment on February 10, 2006. (Tr. 239). Plaintiff reported some improvement with his medications but also noted he experienced fatigue, soreness, and increased pain with activity. Id. Physical therapy was recommended at that time. (Tr. 240). On March 9, 2006, Plaintiff told Dr. Puente-Guzman he was learning to pace himself so he could prevent being in bed for a day or two after basic activities. (Tr. 239).

Plaintiff told Dr. Puente-Guzman on April 6, 2006 that any increase in functional

activities resulted in an exacerbation of pain symptoms. (Tr. 22, 234). He also reported he was not sleeping well and experienced difficulties concentrating and with his short-term memory. (T. 234). On May 16, 2006, Dr. Puente-Guzman noted Plaintiff could manage the pain but if he did any work activities, he could only do it for a couple of hours and then was required to take time off because of increased discomfort and pain. (Tr. 231). Dr. Puente-Guzman also confirmed the 23% permanent impairment rating. (Tr. 22, 231-32).

A Physical Residual Functional Capacity Questionnaire was completed by Dr. Puente-Guzman on August 10, 2006. (Tr. 23, 257-61). He noted that Plaintiff's symptoms included pain, numbness, decreased grip strength and tightness of the hands. (Tr. 23, 257). Dr. Puente-Guzman opined that Plaintiff's pain and other symptoms were severe enough to "frequently" interfere with his attention and concentration and Plaintiff's ability to deal with work stress was severely limited. (Tr. 259). Dr. Puente-Guzman also noted Plaintiff was unable to lift or carry even 10 pounds and had limitations in doing repetitive reaching, handling, or fingering. (Tr. 23, 260).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any

impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.  20 C.F.R. § 404.1520(f).  Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits at least through the date of the decision.  (Tr. 18, 25).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date, July 14, 2005.  (Tr. 18).  At step two, the ALJ found Plaintiff had the following severe impairments: Reflex Sympathetic Dystrophy ("RSD"), Carpal Tunnel Syndrome ("CTS"), and Myalgia.  Id.  At step three, the ALJ determined Plaintiff did not have an impairment, which met or equaled any of the impairments listed in Appendix 1, Subpart P of Regulation No. 4.  (Tr. 19).

The ALJ further determined Plaintiff retained the residual functional capacity ("RFC") to perform light work.  Id.  Specifically, the ALJ found Plaintiff was able to:

> Lift and/or carry 20 pounds occasionally and 10 pounds frequently.  He can stand and/or walk 6 hours and sit 6 hours in an 8-hour workday.  He must avoid ladders or unprotected

> heights and operation of heavy moving machinery. He must avoid repetitive grasping or pushing/pulling or arm controls and must avoid extreme temperatures.

Id. In making this determination, the ALJ found Plaintiff's impairments could reasonably be expected to produce the alleged symptoms. (Tr. 23). However, Plaintiff's assertions concerning the intensity, persistence, and limiting effects of the alleged symptoms were not entirely credible. Id.

At step four, the ALJ utilized the testimony of a vocational expert ("V.E.") during the hearing to determine if Plaintiff could perform any of his past relevant work. (Tr. 285-88). The V.E. explained Plaintiff could not perform any of his past work. (Tr. 286). Accordingly, the ALJ proceeded to step five and asked the V.E. whether Plaintiff could perform other work existing in the national economy. Id. The V.E. testified Plaintiff could perform some entry level jobs, such as a ticket taker, a mailroom clerk, a surveillance system monitor, and an order clerk for food and beverage. (Tr. 286-87). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 26).

## III. ANALYSIS

### A. The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a

suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (explaining how the court must scrutinize the entire record to determine reasonableness of factual findings).

**B.    Issues on Appeal**

Plaintiff argues two issues on appeal.  First, Plaintiff asserts the ALJ erred by failing to determine Plaintiff's fatigue was a severe impairment.  (Doc. 8, p. 11).  Second, Plaintiff asserts the ALJ also erred by not properly addressing all the findings and opinions of Plaintiff's treating physician, Dr. Puente-Guzman.  (Doc. 8, p. 14). Specifically, Plaintiff argues the decision of the ALJ is not based on substantial evidence because the ALJ did not specifically address Plaintiff's fatigue and its limitations anywhere in his decision.  (Doc. 8, p. 13).  Therefore, Plaintiff argues the ALJ erred in determining his RFC.  (Doc. 8, p. 13).  Additionally, Plaintiff contends the decision of the ALJ is not based on substantial evidence because the ALJ only addressed portions of

Plaintiff's treating physician, Dr. Puente-Guzman's, opinions regarding the severity of his impairments and their corresponding limitations. (Doc. 8, p. 14). Because Plaintiff claims the ALJ is not free to "pick and choose" only certain evidence from a treating physician, Plaintiff asserts the failure to address all of Dr. Puente-Guzman's opinions results in error. (Doc. 8, p. 14). The Court will address each of these arguments.

### 1. Whether the ALJ erred by failing to address all of Plaintiff's impairments, and their resulting symptoms and limitations, when determining Plaintiff's RFC?

The ALJ did not err when determining Plaintiff's RFC, even though he did not specifically address in detail Plaintiff's alleged fatigue or conclude it was a severe impairment. While the record supports the determination Plaintiff experienced fatigue, the ALJ was correct to conclude it was not a severe impairment. As both Plaintiff and the Commissioner note in their briefs, the traditional standard for severity in the Eleventh Circuit is the "slight abnormality" test. (Doc. 8, p.11; Doc.11, p.7). Social Security Ruling 85-28 states:

> [A]n impairment or combination of impairments is found "not severe" and a finding of "not disabled" is made at this step when medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work . . .

In Brady v. Heckler, the Eleventh Circuit adopted this definition when holding "an impairment is not severe if it is a slight abnormality, which only has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." 724 F.2d 914, 920 (11th Cir. 1984). Furthermore, the severity of a medically ascertained disability "must be

measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The Commissioner is correct that while a physical or mental condition may be deserving of concern from a medical standpoint, it does not necessarily follow that the condition has a present effect on a claimant's ability to work. (Doc. 11, p.7).

For example, in Gibbs v. Barnhart, the court held substantial evidence supported the ALJ's conclusion that the claimant's physical impairments were not severe because there was no evidence these impairments interfered with his ability to do basic work activities or that he continuously sought treatment for these impairments. 156 Fed. Appx. 243, 246-47 (11th Cir. 2005). Thus, at step two of the sequential analysis, the court performs a threshold inquiry, where the burden is on the Plaintiff to establish "an impairment is not so slight and its effect is not so minimal" on the claimant's ability to work. McDaniel v. Bowen, 800 F.2d 1026 (11th Cir. 1986).

Here, Plaintiff has failed to establish the impairment of fatigue imposed limitations and restrictions that were more than "slight" so as to limit his ability to work, as there are no records showing any limitations as a result of Plaintiff's fatigue. Plaintiff argues Drs. Bole, McSwain, and Puente-Guzman all confirmed on numerous occasions Plaintiff experienced fatigue and this evidence supports a determination Plaintiff's fatigue imposed limitations and restrictions on his ability to work. (Doc. 8, p.13). However, these physicians merely recorded Plaintiff's physical complaints. (Tr. 171, 239, 254). None of the medical records conclude fatigue was a functional limitation on Plaintiff's ability to work. Rather, the medical records support the conclusion Plaintiff's fatigue was,

if anything, an obstacle Plaintiff could overcome. Both Dr. Puente-Guzman and Dr. McSwain concluded Plaintiff could increase his activity level through exercise. (Tr. 240, 255). Specifically, Dr. Puente-Guzman wanted Plaintiff to consider the possibility of a gym membership. (Tr. 240).

The only records concerning fatigue consist of Plaintiff's complaints to Dr. Bole, his acupuncturist, between July and September of 2005, (Tr. 171), and then in January and February of 2006 to Dr. McSwain and Dr. Puente-Guzman. (Tr. 239, 254). Plaintiff also complained of fatigue to Dr. Gonzalez in June of 2006. (Tr. 262). There are no other medical reports indicating Plaintiff complained of fatigue or received treatment for ongoing fatigue. Thus, there is lack of substantial medical evidence regarding fatigue with the majority of the evidence coming from the Plaintiff himself. See Irby ex rel. Irby v. Halter, 171 F. Supp.2d 1287, 1289 (S.D. Ala. 2001) (holding the ALJ did not err in finding the claimant's knee problem did not constitute a severe impairment because there was little medical evidence regarding the knee with most coming from the claimant himself). Given the lack of documented functional limitations, the ALJ was not obligated to find Plaintiff's fatigue was a severe impairment.

Furthermore, the Commissioner is correct that there is a duration requirement Plaintiff must meet in order to establish an impairment as severe. (Doc. 11, p.8). Plaintiff must show the impairment is expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1505. The medical records indicate Plaintiff complained of fatigue for a few months in both late 2005 and early 2006. No doctor indicated the fatigue was expected to last for at least 12 months. On the contrary, there is medical evidence from Dr. Puente-

Guzman, Plaintiff's treating physician, that many of the Plaintiff's symptoms were under control by April, 2006 except for the occasional flare-up. (Tr. 234). Additionally, Plaintiff reported to Dr. Puente-Guzman in May, 2006 that his condition was stable as long as he did not do too many activities and took it easy. (Tr. 231). Thus, there is substantial evidence demonstrating Plaintiff's fatigue is not a severe impairment.

Even if Plaintiff's fatigue is not a severe impairment, Plaintiff still argues his fatigue should have been considered and evaluated in the RFC assessment. (Doc. 8, p. 11). Plaintiff concludes fatigue was never specifically mentioned and therefore, it was not properly considered by the ALJ in determining Plaintiff's RFC. This Court disagrees.

Social Security Ruling (SSR) 96-8p states that the RFC assessment is a function-by-function assessment and that the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe' " because they "may be critical to the outcome of a claim." The RFC assessment must be based on all of the relevant evidence in the case record, including the effects of symptoms that are reasonably attributed to a medically determinable impairment. The assessment must also address both the exertional (sitting, standing, walking, lifting, carrying, pushing, and pulling) and the non-exertional capacities of the claimant. Finally, SSR 96-8p stresses that the RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."

The ALJ followed these guidelines and therefore, properly performed an RFC assessment. He considered all symptoms and the extent to which the symptoms could reasonably be accepted as consistent with the record. (Tr. 19). The symptoms listed by

the ALJ were "memory loss, <u>fatigue</u>, pain, swelling of the hands, brittle nails, and poor eyesight." (Tr. 18) (emphasis added). When evaluating all the relevant evidence and symptoms during the RFC assessment, the ALJ discussed Plaintiff's complaints of extreme fatigue. In his narrative discussion of the medical evidence, the ALJ specifically addressed records from Plaintiff's treatment with Dr. Bole and noted Plaintiff's complaints of extreme fatigue to Dr. Bole. (Tr. 20). Additionally, the ALJ noted Dr. McSwain's impression of Plaintiff's "systemic symptoms of worsening fatigue." (Tr. 22). The ALJ then went on and articulated reasons why Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible as SSR 96-8p required him to do in order to perform a proper RFC assessment. Moreover, as noted previously, there are no records indicating Plaintiff's fatigue imposed any restrictions or limitations on his ability to work. Therefore, it was not necessary for the ALJ to discuss why any limitations could not be reasonably accepted as consistent with the evidence in the record. Accordingly, the undersigned finds the ALJ properly assessed Plaintiff's RFC.

### 2. **Whether the ALJ erred by not properly addressing all the findings and opinions of Dr. Puente-Guzman, Plaintiff's Treating Physician?**

Finally, Plaintiff argues the ALJ erred with respect to the weight he gave the findings and opinions of Dr. Puente-Guzman. Specifically, Plaintiff claims the ALJ did not address all of Dr. Puente-Guzman's conclusions from a Questionnaire dated August 10, 2006 when assigning weight to the conclusions. (Doc. 8, p.14). Plaintiff draws this Court's attention to Dr. Puente-Guzman's conclusions that Plaintiff's pain and symptoms were severe enough to "frequently" interfere with his attention and concentration and that

Plaintiff experienced a "severe" limitation in his ability to deal with work stress. Id. Plaintiff argues neither of these mental health conclusions were mentioned when the ALJ discussed the weight provided to Dr. Puente-Guzman's opinions. (Doc. 8, p.18). Therefore, Plaintiff concludes the ALJ failed to provide good cause based upon substantial evidence to reject these portions of Dr. Puente-Guzman's opinion. Id.

Plaintiff is correct that the ALJ is required to "state with particularity the weight he gave different medical opinions and the reasons therefor." Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987); Caulder v. Bowen, 791 F.2d 872, 880 (11th Cir. 1986). The failure of the ALJ to specify what weight is given to the treating physician's opinion or the reasons for giving it no weight is reversible error. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987) (explaining that "we cannot, however, conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered"); Ryan v. Heckler, 762 F.2d 939, 941 (11th Cir. 1985). While the ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion," the ALJ is, however, "required to state with particularity the weight he gives to different medical opinions and the reasons why." McCloud v. Barnhart, 166 Fed. Appx. 410, 418-19 (11th Cir. 2006). The Eleventh Circuit has found good cause to discount a treating physician's opinion when the opinion is not supported by the record, the evidence supports a contrary finding, the opinion is conclusory, or when the opinion is inconsistent with the doctor's own records. Phillips v. Barnhart, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (citing Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In the case at hand, the ALJ stated the weight he gave to Dr. Puente-Guzman's opinions and the reasons why. Specifically, with respect to the weight he assigned Dr. Puente-Guzman's opinions, the ALJ stated:

> The Administrative Law Judge has considered the opinion of Dr. Puente-Guzman and gives it appropriate wight. The undersigned notes that Dr. Puente-Guzman has a treatment history with the claimant; however, his opinion is not entirely supported by objective medical findings or with the evidence of record when considered in its entirety. The undersigned notes that Dr. Puente-Guzman opined that the claimant was unable to lift/carry any weight and that he had limitations in doing repetitive reaching, handling, or fingering. The evidence of record documents that the claimant has limitations in doing repetitive movements with his upper extremities; however, there is no evidence that the claimant is unable to lift/carry. This is further supported by the claimant's testimony to daily activities.

(Tr. 24). Plaintiff contends the ALJ failed to either adopt or reject Dr. Puente-Guzman's opinions regarding the impact of Plaintiff's impairments on his attention, concentration and ability to deal with work stress because these findings were not specifically mentioned in the above-referenced paragraph. (Doc. 8, pp. 16-17).

Earlier in his decision, the ALJ cited to the entire Questionnaire completed by Dr. Puente-Guzman. The ALJ stated:

> Dr. Puente-Guzman completed a Physical Residual Functional Capacity Questionnaire on August 10, 2006. . . . Dr. Puente-Guzman stated that the claimant frequently experienced pain severe enough to interfere with attention and concentration and that claimant's ability to deal with work stress was severely limited.

(Tr. 23). Accordingly, it is clear the ALJ considered Dr. Puente-Guzman's opinions regarding Plaintiff's alleged limitations on attention and concentration and ability to deal with work stress. As such, the undersigned concludes the ALJ rejected the entire Questionnaire as being "not entirely supported by objective medical findings or [by] the

evidence of the record when considered in its entirety." (Tr. 24). The ALJ then gave examples utilizing Dr. Puente-Guzman's opinions regarding Plaintiff's ability to reach, handle and lift. Id. The Court agrees that it would have been preferable for the ALJ to have mentioned Dr. Puente-Guzman's findings regarding Plaintiff's attention, concentration and ability to deal with work stress at the same time he referenced the reaching, handling and lifting. However, the Court does not believe the ALJ's failure to do so indicates he did not consider and reject Dr. Puente-Guzman's opinions regarding Plaintiff's mental impairments. The record simply does not support Plaintiff's assertion that the ALJ did not address and evaluate all of Dr. Puente-Guzman's opinions from the Questionnaire. Accordingly, the undersigned finds the ALJ properly considered and discussed the weight he gave to all of Dr. Puente-Guzman's opinions.

## IV.     CONCLUSION

For the foregoing reasons, the undersigned finds the ALJ's decision is supported by substantial evidence. Accordingly, the Clerk of the Court is directed to enter judgment **AFFIRMING** the Commissioner's decision and, thereafter, to close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  23rd  day of July, 2008.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:
Counsel of Record